[Cite as *Castro v. Hero Havens, L.L.C.*, 2026-Ohio-1354.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Patrick A. Castro, Jr., | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 25AP-397 |
| v. | : | (C.P.C. No. 23CV-63) |
| Hero Havens, LLC, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 14, 2026

**On brief:** *Dickie, McCamey & Chilcote, P.C.*, and *Christopher R. Pettit*, for appellant.

**On brief:** *Taft Stettinius & Hollister LLP*, and *Janica Pierce Tucker*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} This is an appeal by plaintiff-appellant, Patrick A. Castro, Jr., from orders entered by the Franklin County Municipal Court ("municipal court") on November 30 and December 9, 2022, which (1) granted the motion of defendant-appellee, Hero Havens, LLC, to amend its counterclaim, and (2) transferred the case to the Franklin County Court of Common Pleas ("trial court" or "common pleas court"); additionally, appellant appeals from decisions and entries of the common pleas court, entered on May 2, 2023 and January 24, 2024, which (1) granted appellee's motion for additional time under Civ.R. 56(F), and (2) denied appellant's motion for summary judgment. Appellant's notice of appeal references that all of the aforementioned orders and entries of the respective courts merged into a final judgment of the common pleas court, entered on April 22, 2025,

which found in favor of appellee on its counterclaim for breach of oral agreement against appellant following a jury waived trial before a magistrate of the trial court.

## I.  Facts and Procedural History

{¶ 2}   On August 2, 2021, appellant filed a complaint in the municipal court against appellee.  According to the complaint, appellant is the owner of a residence on Arbutus Avenue, Grove City, Ohio, and appellee is the owner of property on Columbus Street, Grove City, Ohio, located on the same block and one parcel away from appellant's property.  In January 2020, appellant engaged a company, Three Pillars Construction ("Three Pillars"), to construct a residential home on his property.  During the excavation process, a sewer line on the property was inadvertently cut; the cut sewer line serviced, in part, appellee's property.  While a temporary line tap was utilized for appellee's property, "a permanent solution was required as [appellee's] sewer line had no legal right to cross [appellant's] [p]roperty in its then existing location."  (Compl. at ¶ 7.)

{¶ 3}   The complaint alleged appellant coordinated with the three surrounding parcel owners serviced by the sewer line, and that appellant paid for a new sewer line to be installed across all four parcels.  Prior to the work, appellant had discussions with appellee and other property owners regarding the sewer line. In September 2020, a verbal agreement was reached between appellant and appellee whereby appellant would pay for the entire line to be installed and appellee would reimburse appellant for its share.  The cost of the sewer line installation attributable to appellee's property was $12,000. The complaint alleged that two of the three neighboring property owners reimbursed appellant for the funds he expended, but that appellee had not paid appellant in accordance with the parties' agreement.  The complaint asserted causes of action for breach of verbal contract and unjust enrichment, and appellant sought judgment against appellee in the amount of $13,794.55.

{¶ 4}   On September 21, 2021, appellant filed a motion for default judgment.  On September 28, 2021, the municipal court granted appellant's motion for default judgment.  On October 6, 2021, appellee filed a motion for leave to file an answer and counterclaim, which the court subsequently granted.  Appellee filed its answer and counterclaim on December 6, 2021.

{¶ 5} In its counterclaim, appellee alleged appellant and his agents had damaged appellee's sewer drainage line and that appellant made oral promises to appellee that he would remedy the damage by creating a permanent and effective solution. According to the counterclaim, appellee, at its own cost, hired an excavating company, Edwards Excavating, to temporarily restore sewer service to its residence, including installation of a six-inch sewer line across the easement to effectuate a permanent line. It was alleged that appellant, without the approval of appellee, hired a different contractor, Windsor Companies ("Windsor"), who " 'tied into' the temporary 80 foot level sewer line rather than the permanent sewer line that would ensure the 'proper fall' for sewer line and permanent solution that was promised by [appellant]." (Answer & Countercl. at 5.) It was further alleged that, in order to "restore [appellee's] irrigation system to its previous functionality, [appellee] will incur future costs of $24,301.00." (Answer & Countercl. at 6.) The counterclaim asserted causes of action for breach of oral contract, unjust enrichment, and quantum meruit.

{¶ 6} On October 28, 2022, appellant filed a motion for summary judgment. On November 10, 2022, appellee filed a motion for leave to file instanter an amended counterclaim. On November 15, 2022, appellee filed a memorandum contra appellant's motion for summary judgment. Also on November 15, 2022, appellant filed a motion for extension of time to respond to appellee's motion for leave to amend its counterclaim. On November 18, 2022, the trial court granted appellant's motion for extension of time to respond to the motion for leave. On November 23, 2022, the municipal court granted appellee's motion for leave to file instanter its amended counterclaim. Appellant filed a memorandum in opposition to appellee's motion for leave to amend its counterclaim on November 30, 2022.

{¶ 7} By entry filed December 9, 2022, the municipal court ordered transfer of the case to the common pleas court. In its entry, the municipal court noted the counterclaim "exceeds the monetary jurisdiction of this Court" and, additionally, appellee "is also requesting a declaratory judgment and a preliminary injunction which both exceed this Court's jurisdiction." (Dec. 9, 2022 Entry.)

{¶ 8} On February 3, 2023, appellant filed with the common pleas court a notice of filing of his motion for summary judgment previously filed in the municipal court. On

February 17, 2023, appellee filed a motion for continuance of the trial court's ruling on appellant's motion for summary judgment pursuant to Civ.R. 56(F). On March 6, 2023, appellant filed a memorandum in opposition to appellee's motion for continuance. By entry filed May 2, 2023, the trial court granted appellee's motion for additional time to respond to summary judgment.

{¶ 9} On January 24, 2024, the trial court filed a decision and entry denying appellant's motion for summary judgment. The court found in part that "certain terms of the oral agreement are clearly missing" from an email memorializing that agreement, and that "these terms and the parties' sparring viewpoints . . . create a dispute of material fact regarding whether an oral agreement truly existed." (Jan. 24, 2024 Decision at 6.) The trial court further found "[a] dispute of material fact remains concerning the parties' unjust enrichment claims as well," including "questions of material fact . . . concerning who, if any, was unjustly enriched." (Decision at 6.)

{¶ 10} On August 19, 2024, the matter came before a magistrate of the trial court for a jury waived trial. On January 31, 2025, the magistrate issued a decision on the merits, finding in favor of appellee on its counterclaim based on a determination appellant "breached the oral agreement and failed to effectuate the negotiated permanent solution to [appellee's] sewer line in the manner that was agreed upon." (Mag.'s Decision at 18.) The magistrate concluded appellee was entitled to a total damages award of $19,853.45 (after crediting appellant the sum of $9,794.55 owed by appellee for "other components of the oral agreement"). (Mag.'s Decision at 20.) By entry filed April 22, 2025, the trial court entered judgment in favor of appellee in the amount of $19,853.45.

## II. Assignments of Error

{¶ 11} Appellant appeals and assigns the following three assignments of error for our review:

> [I.] The Franklin County Municipal Court committed reversible error by granting Defendant-Appellee Hero Havens leave to amend its Counterclaim, *instanter*, on November 23, 2022 and by transferring the case to the Franklin County, Ohio Court of Common Pleas on December 9, 2022.
>
> [II.] The Franklin County, Ohio Court of Common Pleas committed reversible error by granting Defendant-Appellee Hero Haven's additional time to conduct discovery and

oppose Plaintiff-Appellant Patrick A. Castro, Jr.'s Motion for Summary Judgment pursuant to Rule 56(F) of the Ohio Rules of Civil Procedure on May 2, 2023.

[III.] The Franklin County, Ohio Court of Common Pleas committed reversible error by denying Plaintiff-Appellant Patrick A. Castro, Jr.'s Motion for Summary Judgment on January 24, 2024.

## III. Discussion

{¶ 12} Under his first assignment of error, appellant argues the municipal court erred by granting appellee's motion for leave to file instanter its amended counterclaim, which resulted in the case being transferred to the common pleas court. Appellant argues the municipal court failed to consider arguments raised in his memorandum in opposition to appellee's motion for leave to amend, and further contends appellee's motion was untimely.

{¶ 13} As outlined under the facts, on November 10, 2022, appellee filed with the municipal court a motion for leave to file instanter an amended counterclaim. On November 15, 2022, appellant filed a motion for extension of time to respond to appellee's motion for leave. On November 18, 2022, the municipal court granted appellant's request to extend the time to respond to appellee's motion for leave (on or before November 30, 2022). By order filed November 23, 2022, the municipal court granted appellee's motion for leave to file instanter an amended counterclaim. Appellant filed his memorandum in opposition to appellee's motion for leave to amend its counterclaim on November 30, 2022. By entry filed December 9, 2022, the municipal court ordered the case transferred to the common pleas court, noting that appellee's counterclaim exceeded the monetary jurisdiction of the court and that appellee was "also requesting a declaratory judgment and a preliminary injunction which both exceed this Court's jurisdiction." (Dec. 9, 2022 Entry.)

{¶ 14} In seeking leave to amend its counterclaim, appellee noted that its original counterclaim stated it would " 'incur future costs of $24,301.00.' " (Def.'s Mot. for Leave at 6.) Appellee argued that "[s]ince that time, however, [it] has received estimates and incurred additional expenses as a result of the damage caused by [appellant] and his agents and anticipates expending additional amounts to properly restore sewer service to its property." (Def.'s Mot. for Leave at 7.) Appellee asserted it had received two estimates by

a plumbing company for the replacement of the sewer line, the first estimate totaling $74,029 and the second estimate totaling $84,508.

{¶ 15} In opposing appellee's motion for leave to amend its counterclaim, appellant argued that appellee's request to add two new causes of action 339 days after the original counterclaim was untimely and prejudicial, and that the addition of these claims was futile because appellee could not make a prima facie showing in support of the new causes of action. Appellant further argued that granting leave to amend would result in the case being transferred to the common pleas court, causing more delay, and that leave should be denied because it was sought after appellant filed his motion for summary judgment.

{¶ 16} This court "reviews a trial court's decision on a motion for leave to file an amended pleading under an abuse of discretion standard." *Gordon v. Dept. of Rehab. & Corr.*, 2018-Ohio-2272, ¶ 9 (10th Dist.), citing *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122 (1991). Civ.R. 15(A), which governs the amendment of pleadings, states in part: "A party may amend its pleading once as a matter of course . . . [i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires."

{¶ 17} The Supreme Court of Ohio has held that Civ.R. 15(A) "expresses a liberal policy toward the allowance of amendments," and has observed the rule " 'was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.' " *Hall v. Bunn*, 11 Ohio St.3d 118, 121 (1984), quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Ohio courts recognize, "[s]ince 'the language of Civ.R. 15(A) favors a liberal amendment policy[,] . . . a motion for leave to amend should be granted absent a finding of bad faith, undue delay or undue prejudice to the opposing party.' " *Simmons v. Am. Pacific Ents., L.L.C.*, 2005-Ohio-6957, ¶ 9 (10th Dist.), quoting *Hoover v. Sumlin*, 12 Ohio St.3d 1, 6 (1984). In this respect, "[p]rejudice to an opposing party is the most critical factor to be considered in determining whether to grant leave to amend." *Id.*, citing *Frayer Seed, Inc. v. Century 21 Fertilizer & Farm Chems., Inc.*, 51 Ohio App.3d 158, 165 (3d Dist. 1988).

{¶ 18} Further, "[t]imeliness of the request is another factor to consider, but delay, in itself, should not operate to preclude an amendment." *Id.*, citing *Frayer Seed*. Thus, "[c]ourts have found that even where there is some delay in seeking to amend a pleading,

there is no abuse of discretion to grant leave where this did not result in prejudice to the opposing party." *Shavel v. Shavel*, 2023-Ohio-4876, ¶ 45 (11th Dist.), citing *McConnell v. Hunt Sports Ents.*, 132 Ohio App.3d 657, 679 (10th Dist. 1999).

{¶ 19} In asserting the municipal court should have denied appellee's motion for leave to amend as untimely, appellant maintains appellee offered no explanation for its delay in seeking leave to amend approximately 11 months after filing its initial answer and counterclaim. The record indicates, however, appellee argued it was seeking leave based on developments that occurred after the filing of that initial counterclaim. As set forth above, appellee argued in its motion for leave that, since the time of the filing of its original counterclaim, in which it alleged it would incur future costs of $24,301 due to the damage to its sewer system, appellee had incurred additional expenses and had received estimates above and beyond that original amount. Appellee attached as an exhibit to the motion two separate estimates from a plumbing company, EcoPlumber, for the replacement of the sewer line, totaling $74,029 and $84,508, respectively.

{¶ 20} Also attached as an exhibit to appellee's motion for leave to amend were copies of still photographs from a video inspection of the sewer taken by EcoPlumber. Appellee argued the exhibit indicated that both the temporary and permanent sewer lines "have six (6) inch dips under the driveway, trapping both water and sewage," and that because of these dips both lines "must be repaired to code." (Def.'s Mot. for Leave at 5.) Appellee further argued it had hired a company (Capital City Mechanical) to jet clean and flush out the temporary line, and that the company advised appellee the sewer line would need to be jet cleaned approximately every six months if the sewer line was not repaired.

{¶ 21} The first amended counterclaim, attached to the motion for leave, similarly alleged that video footage of an inspection of the sewer "shows the improper fall of the sewer line and at least one damaged pipe." (First Am. Countercl. at 4.) It was alleged the sewer line issues appeared to be located directly under the driveway appellant installed over the easement. According to the amended counterclaim, appellant's agents damaged the temporary line when packing down gravel to pour a concrete driveway over the easement, requiring appellee to hire a company to jet clean and flush out the temporary sewer line in order for the line to work effectively, and that the estimated costs for necessary repairs, based on information obtained from the video inspection, exceeded $70,000.

{¶ 22} As noted, courts are "guided by the concepts" that leave to amend "should be freely given when 'justice so requires,' " as well as "the Ohio Supreme Court's admonition that cases should be decided on their merits when possible, rather than pleading technicalities." *Merchants Natl. Bank v. Overstake*, 2012-Ohio-6309, ¶ 18 (4th Dist.).

{¶ 23} Based on the record presented, and in light of the liberal amendment policy of Civ.R. 15(A) and the preference to decide cases on their merits, we find the municipal court did not abuse its discretion in permitting appellee leave to amend its counterclaim. Here, in granting appellee's motion for leave, the municipal court could have concluded any purported delay was not undue but, rather, reasonable in light of new information and more recent events/developments subsequent to the filing of the initial answer and counterclaim. Nor does the record suggest bad faith on the part of appellee in attempting to amend based on alleged additional expenses and new estimates not foreseen at the time of the original filing. The municipal court could have also determined there would be no undue prejudice in granting leave to amend as the claims and issues raised in the proposed amended counterclaim arose out of the same purported oral agreement between the parties to reach a permanent and effective solution regarding the damaged sewer line.

{¶ 24} Appellant contends the municipal court erred by granting the motion for leave prior to appellant's deadline to respond. Appellant relies on case law holding that where a trial court " 'disregards the response time created by the Ohio Rules of Civil Procedure, that court has committed reversible error,' absent a showing that the error was harmless." *Watershed Mgt., L.L.C. v. Neff*, 2012-Ohio-1020, ¶ 67 (4th Dist.), quoting *Gibson-Myers & Assocs. v. Pearce*, 1999 Ohio App. LEXIS 5010, *13 (9th Dist. Oct. 27, 1999), citing *In re Foreclosure of Liens for Delinquent Taxes*, 79 Ohio App.3d 766, 771-72 (2d Dist. 1992).

{¶ 25} In response, appellee notes the order issued by the municipal court "was an extension of time, not a change in the time mandated by the Ohio Civil Rules," i.e., the municipal court granted appellant an extension of time "in excess of the time created by the Ohio Rules of Civil Procedure." (Appellee's Brief at 16.) Appellee thus maintains the municipal court did not disregard the response time created by the Rules of Civil Procedure, but rather "issued a ruling after such time had elapsed but before the extension." (Appellee's Brief at 17.)

{¶ 26} In general, "[a] trial court has the inherent power to control its own orders and may set aside such orders at its discretion." *In re Guardianship of Maurer*, 108 Ohio App.3d 354, 358 (6th Dist. 1995), citing *First Natl. Bank of Dunkirk v. Smith*, 102 Ohio St. 120 (1921), paragraph one of the syllabus. Further, a trial court's inherent authority includes the discretion to modify "their own interlocutory orders." *In re Disqualification of Fuller*, 2025-Ohio-5601, ¶ 60.

{¶ 27} Here, accepting appellant's contention that the municipal court acted prematurely in granting leave to amend, we do not find reversible error. Rather, having reviewed appellant's response to the motion for leave, predicated primarily on the timeliness of the motion, and given our determination the municipal court could have reasonably concluded the request for leave to amend was not filed with undue delay, we find any error to be harmless. Again, although timeliness is a factor, "delay, in itself, should not operate to preclude an amendment." *Simmons*, 2005-Ohio-6957, at ¶ 9 (10th Dist.).

{¶ 28} Appellant also notes that a motion for summary judgment was pending at the time appellee sought leave to amend, and argues the filing of a motion for leave under such circumstances "raises the specter of prejudice." (Appellant's Brief at 32.) A trial court, however, retains discretion to rule on a motion for leave under such circumstances, and we find no abuse of discretion here. *See, e.g.*, *Thomas v. Shaevitz*, 1999 Ohio App. LEXIS 4235 (10th Dist. Sept. 16, 1999) (finding no abuse of discretion by trial court in granting leave to amend complaint despite the fact motion for summary judgment was pending before court); *Hollinghead v. Bey*, 2000 Ohio App. LEXIS 3234, *17 (6th Dist. July 21, 2000) (trial court did not abuse its discretion by "considering a motion for leave to file an amended answer . . . before it ruled on cross-motions for summary judgment that were pending before the motion for leave to file an amended answer [was] filed").

{¶ 29} Appellant also challenges the municipal court's order transferring the case to the common pleas court. The municipal court, having granted appellee leave to amend its counterclaim, found that it lacked jurisdiction over the matter as the counterclaim "exceeds the monetary jurisdiction of this Court." (Dec. 9, 2022 Entry.) Appellee's amended counterclaim sought judgment on its claims for breach of oral contract and unjust enrichment in excess of $15,000.

{¶ 30} Under Ohio law, "R.C. 1901.17 limits the municipal court's monetary jurisdiction to $15,000, [and] R.C. 1901.22(E) and Civ.R. 13(J) provide that if a counterclaim claim exceeds the jurisdictional amount of the municipal court, the judge shall certify the proceedings to the court of common pleas." *State ex rel. El Turk v. Comstock*, 2018-Ohio-2125, ¶ 6 (8th Dist.). *See also Hall v. Silver*, 2020-Ohio-2810, ¶ 16 (9th Dist.), citing R.C. 1901.17; Civ.R. 13(J) ("A municipal court lacks subject matter jurisdiction over any case in which the amount claimed by any party exceeds $15,000.").

{¶ 31} Having found the municipal court did not abuse its discretion in granting appellee leave to amend its counterclaim, we further find the municipal court did not err in transferring the case to the common pleas court as the damages amount claimed in the amended counterclaim exceeded the municipal court's jurisdictional limit. Based on the foregoing, appellant's first assignment of error is not well-taken and is overruled.

{¶ 32} Under the second assignment of error, appellant argues the trial court erred by granting appellee additional time to conduct discovery and to oppose appellant's motion for summary judgment. Appellant maintains appellee did not fulfill its burden under Civ.R. 56(F) to justify its request for a continuance, asserting the affidavit submitted by appellee in support did not state sufficient reasons why appellee was not able to present affidavit facts to oppose the motion for summary judgment in the first instance. According to appellant, appellee's motion for continuance "appeared to be nothing more than a request to engage in a 'fishing expedition' undertaken in the hopes of finding some evidence to support [appellee's] opposition to" appellant's motion for summary judgment. (Appellant's Brief at 46.)

{¶ 33} As set forth under the facts, appellant initially filed his motion for summary judgment in the municipal court on October 28, 2022. Following the municipal court's transfer (on January 5, 2023) of the case to the common pleas court, appellant filed with the common pleas court (on February 3, 2023) notice of his filing of the motion for summary judgment previously filed in the municipal court. On February 17, 2023, appellee filed a motion for continuance of the trial court's ruling on appellant's motion for summary judgment pursuant to Civ.R. 56(F). In support of its motion for continuance, appellee submitted the affidavit of Lawrence Titus, the owner of Hero Havens, LLC.

{¶ 34} On March 6, 2023, appellant filed a memorandum in opposition to appellee's motion for continuance. In his memorandum in support, appellant argued appellee had not shown sufficient reasons why it could not present affidavit facts to oppose appellant's motion for summary judgment. Appellant further argued appellee had not demonstrated that additional discovery would aid in the demonstration or negation of a fact relevant to an issue raised in appellant's motion for summary judgment.

{¶ 35} On March 13, 2023, appellee filed a reply to appellant's memorandum in opposition. On May 2, 2023, the trial court filed a decision and entry granting appellee's motion for additional time pursuant to Civ.R.56(F). The court's entry provided appellee had until July 7, 2023 to complete necessary discovery and to supplement its response to the pending motion for summary judgment.

{¶ 36} In circumstances where "a party opposing a summary judgment motion needs further evidence to sustain its case, the proper remedy is to move the trial court to delay judgment pursuant to Civ.R. 56(F)." *Drake Constr. Co. v. Kemper House Mentor, Inc.*, 2007-Ohio-120, ¶ 26 (11th Dist.). Civ.R. 56(F) states as follows:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

{¶ 37} Under Ohio law, "the decision to grant or deny a continuance is generally relegated to the sound discretion of the trial court." *Fiske v. Rooney*, 126 Ohio App.3d 649, 654 (4th Dist. 1998), citing *State v. Grant*, 1993-Ohio-171. As set forth above, "the provisions of Civ.R. 56(F) allow for the trial court to grant a continuance during summary judgment proceedings so that additional discovery may be had to oppose a motion," and "[t]his too is relegated to the sound discretion of the trial court." *Id.*, citing *Manofsky v. Goodyear Tire & Rubber Co.*, 69 Ohio App.3d 663, 658 (9th Dist. 1990). A trial court's "discretion in granting continuances pursuant to Civ.R. 56(F) should be exercised liberally in favor of the nonmoving party." *Id.* at 655, citing *Whiteleather v. Yosowitz*, 10 Ohio App.3d 272 (8th Dist. 1983); *Carrier v. Weisheimer Cos.*, 1996 Ohio App. LEXIS 617 (10th Dist. Feb. 22, 1996). A court's order permitting additional time under Civ.R. 56(F) reflects

the general tenet that cases be decided on their "merits." *Hobson v. Morrow Cty. Commrs.*, 2004-Ohio-6644, ¶ 19 (5th Dist.).

{¶ 38} Civ.R. 56(F) requires the party requesting a continuance "to submit an affidavit stating sufficient reasons why the party cannot present facts essential to justify the party's opposition to the summary judgment motion." *Perpetual Fed. Sav. Bank v. TDS2 Property Mgt., L.L.C.*, 2009-Ohio-6774, ¶ 13 (10th Dist.), citing *ABN AMRO Mtge. Group, Inc. v. Roush*, 2005-Ohio-1763, ¶ 22 (10th Dist.). Thus, "[s]imply requesting a continuance in order to conduct discovery is not a sufficient explanation for why a party cannot present affidavits in opposition to the motion for summary judgment." *Id.* Under Civ.R. 56(F), " 'a party who seeks a continuance for further discovery is not required to specify what facts he hopes to discover, especially where the facts are in the control of the party moving for summary judgment,' " but " 'the court must be convinced that there is a likelihood of discovering some such facts.' " *Heimberger v. Zeal Hotel Group Ltd.*, 2015-Ohio-3845, ¶ 49 (10th Dist.), quoting *Doriott v. M.V.H.E., Inc.*, 2004-Ohio-867, ¶ 41 (2d Dist.).

{¶ 39} In its Civ.R. 56(F) motion, appellee argued that because appellant's motion for summary judgment was filed prior to the filing of appellee's amended counterclaim, the motion for summary judgment "did not address, and could not have addressed, or otherwise resolve the issues asserted in the Amended Counterclaim." (Appellee's Mot. for Continuance at 6-7.) Appellee further argued that since discovery had not been conducted with respect to the counterclaims as set forth in its amended counterclaim, additional discovery was necessary, including the need to investigate the sewer line "and extent of damage currently known and damage or issues that may potentially arise in the future." (Appellee's Mot. for Continuance at 7.) Appellee also maintained it needed additional information to determine whether the work completed by a company hired by appellant (Windsor) "comports with the parties' agreement." (Appellee's Mot. for Continuance at 8.)

{¶ 40} Appellee anticipated it would need to depose, "at least, [appellant], a representative of [the] construction company hired by [appellant], and an individual with regard to the sewer line." (Appellee's Mot. for Continuance at 8.) Appellee also requested additional time "to conduct discovery to obtain documentary evidence concerning the parties' agreement, whether the terms of the agreement have been effectuated, and, if not,

what steps are necessary to rectify the issues that continue to plague [appellee's] property." (Appellee's Mot. for Continuance at 8.)

{¶ 41} In support of its Civ.R. 56(F) motion, appellee submitted the affidavit of Lawrence Titus in which he averred that the company hired by appellant to install a new sewer line had tied into the temporary (rather than the permanent) sewer line, causing appellee's sewer system to back up, and that a preliminary investigation indicated the temporary line "is crushed, has since come apart, and is likely now leaking sewage under [appellant's] extended concrete driveway." (Titus Aff. at ¶ 10.) Titus further averred that his property "continues to experience issues with the improper sewer line," and that he had been advised that if the sewer line is not repaired, it will need to be flushed out every six months and will continue to experience issues until a permanent and effective solution is implemented. (Titus Aff. at ¶ 11.)

{¶ 42} As noted, "[p]ursuant to Civ.R. 56(F), the trial court has discretion when considering a motion for a continuance," and "[w]here there is a realistic possibility that genuine issues of material fact will require jury consideration that discretion should be exercised liberally in favor of a nonmoving party who proposes any reasonable interval for the production of those materials." *Beal Bank S.S.B. v. Means*, 2011-Ohio-5922, ¶ 14 (8th Dist.), citing *Frost v. Cleveland Rehab. & Special Care Ctr., Inc.*, 2008-Ohio-1718, (8th Dist.); *Whiteleather*, 10 Ohio App.3d at 272.

{¶ 43} On review, we find the trial court did not err in its determination that appellee provided a sufficient factual basis and justification to warrant additional time to complete discovery under Civ.R. 56(F). Appellee's Civ.R. 56(F) motion, supported by the affidavit of Titus, maintained additional information was necessary to respond to summary judgment and that such information would likely create a genuine issue of material fact. As indicated, the affidavit of Titus averred that the sewer line installed by the company hired by appellant (Windsor) was not consistent with the parties' oral agreement to effectuate a permanent solution, and appellee's motion identified several individuals, including appellant and a representative of the construction company hired by appellant, whom appellee wished to depose in order to oppose the motion for summary judgment. In granting a continuance, a trial court may consider how much of the information sought by a party was " 'in the control of the party moving for summary judgment.' " *Heimberger*, 2015-Ohio-3845, at

¶ 49 (10th Dist.), quoting *Doriott*, 2004-Ohio-867, at ¶ 41 (2d Dist.). Given the discretion of the trial court in discovery matters, and the basic tenet that cases should be decided on the merits, we find no abuse of discretion by the trial court in granting appellee's Civ.R. 56(F) motion. Appellant's second assignment of error is not well-taken and is overruled.

{¶ 44} Under the third assignment of error, appellant contends the trial court erred in denying his motion for summary judgment. Appellant argues that, "[i]n the end, the gist of [appellee's] argument in opposition to [appellant's] Motion for Summary Judgment was based upon a difference of opinion between [appellant] and Mr. Titus as to what was required of each party in terms of completing the work on the sewer line servicing [appellee's] property." (Appellant's Brief at 49.) According to appellant, he fulfilled his obligations under the oral agreement as outlined in an email that Titus sent to Cindi Fitzpatrick, a Grove City public service employee. Appellant argues appellee lacked any objective evidence to show appellant "actually agreed to connect the sewer tap to the sewer line running along the back of his property." (Appellant's Brief at 52.)

{¶ 45} In response, appellee argues "[t]he difference of testimony and opinion between [appellant] and [appellee] is the essence of what the law construes as a genuine issue of material fact," and therefore the trial court's decision in denying appellant's motion for summary judgment "was appropriate." (Appellee's Brief at 24.)

{¶ 46} This court reviews a trial court's grant or denial of summary judgment "under a de novo standard." *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 2019-Ohio-4015, ¶ 6 (10th Dist.), citing *Capella III, L.L.C. v. Wilcox*, 2010-Ohio-4746, ¶ 16 (10th Dist.), citing *Andersen v. Highland House Co.*, 93 Ohio St.3d 547, 548 (2001). Pursuant to Civ.R. 56(C), "[s]ummary judgment is appropriate where 'the moving party demonstrates that: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made.' " *Id.*, quoting *Capella III* at ¶ 16, citing *Gilbert v. Summit Cty.*, 2004-Ohio-7108, ¶ 6. In ruling on a summary judgment motion, "the court must resolve all doubts and construe the evidence in favor of the non-moving party." *Id.*, citing *Pilz v. Dept. of Rehab. & Corr.*, 2004-Ohio-4040, ¶ 8 (10th Dist.).

{¶ 47} In the present case, appellant moved for summary judgment on his claims for breach of contract and unjust enrichment, and also on appellee's counterclaims for breach of contract, unjust enrichment, declaratory judgment, and injunctive relief. Under Ohio law, "[a] contract is defined to mean 'a promise, or a set of promises, that is actionable upon breach,' " and "[i]n order to succeed on a claim for breach of contract, 'a party must prove the existence of a contract, the party's performance under the contract, the opposing party's breach, and resulting damage.' " *Balalovski v. Tanevski*, 2021-Ohio-3990, ¶ 41 (10th Dist.), quoting *Depompei v. Santabarbara*, 2015-Ohio-18, ¶ 20-21 (8th Dist.). In order to prove "the existence of a contract, the plaintiff must show both parties consented to the terms of the contract, both parties had a 'meeting of the minds,' and the terms of the contract are definite and certain." *Gates v. Praul*, 2011-Ohio-6230, ¶ 18 (10th Dist.), quoting *Blessing v. Bowersock*, 2000 Ohio App. LEXIS 5751, *5 (10th Dist. Dec. 12, 2000), citing *McSweeney v. Jackson*, 117 Ohio App.3d 623, 631 (4th Dist. 1996). A determination as to the terms of an oral contract "is a question for the trier of fact." *Id.*, citing *Blessing*. In this respect, the "[t]erms of an oral contract may be determined from words, deeds, acts, and silence of the parties." (Internal quotation marks omitted.) *Id.* at ¶ 19, quoting *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 15, quoting *Rutledge v. Hoffman*, 81 Ohio App. 85 (12th Dist. 1947), paragraph one of the syllabus.

{¶ 48} Ohio law provides that an action for "[u]njust enrichment occurs. . . ' "when a party retains money or benefits which in justice and equity belong to another." ' " *Padula v. Wagner*, 2015-Ohio-2374, ¶ 47 (9th Dist.), quoting *Liberty Mut. Ins. Co. v. Indus. Comm. of Ohio*, 40 Ohio St.3d 109, 111 (1988), quoting *Stan-Clean of Lexington, Inc. v. Stanley Steemer Internatl., Inc.*, 2 Ohio App.3d 129, 131 (10th Dist. 1981). In order to "prevail on a claim of unjust enrichment, a plaintiff must show: '(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment . . .' " *Id.*, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984).

{¶ 49} While a party "may plead, in the alternative, both a breach of contract claim and a claim for unjust enrichment . . . a party may not recover for the same services under both a contractual claim and a claim for unjust enrichment, but may recover under an unjust enrichment theory if the contractual claim fails." *Jones v. Carpenter*, 2019-Ohio-

619, ¶ 42 (10th Dist.), citing *Cristino v. Bur. of Workers' Comp.*, 2012-Ohio-4420, ¶ 26 (10th Dist.).

{¶ 50} As indicated, the trial court denied appellant's motion for summary judgment by entry filed January 24, 2024, finding "disputes of material fact remain concerning all claims asserted." (Jan. 24, 2024 Decision at 7.)  In its decision, the court noted the parties "agree the oral contract is memorialized in the September 2, 2020 email from Mr. Titus to Grove City Public Service Director Cindi Fitzpatrick." (Decision at 5.)

{¶ 51} The September 2020 email from Lawrence Titus to Cindi Fitzpatrick states in part as follows:

> Hi Cindy,
>
> Per our conversation yesterday about our sewer line being cut by 3 Pillars Consrtruction. I would like to have Michael Edwards Escavating  temporarily hook my sewer line back up to keep the new Castro Home moving forward, give us time to get estimates and schedule my sewer line to modern code.
>
> 1. Extend current 6" sewer line back through easement across Castro Property . . . at existing height.
>
> 2. Provide Cleanout on Roach Property . . . and temporarily reattach my sewer line.
>
> 3. Install new sewer line in easement on Castro Property starting 5' in on my property and extending 5' in to Roach property.  This new line would be closer to the back fence line, capped on both ends and running at proper depth for future perminant  connects.
>
> 4. Remove current shed in the easement on Smith Property . . . to run (x2) new 6" perminant  sewer taps.  Castro and Titus providing new shed for Smith Family.
>
> 5. Castro and Titus complete (x2) new 6" sewer taps in 2021 within back easment.
>
> 6. Cap Titus temporary sewer line at new cleanout on Roach Property.

(Sic passim.) (Sept. 2, 2020 email.)

{¶ 52} In its summary judgment decision, the trial court outlined the competing positions of the parties, i.e., noting appellant's contention "he complied with all noted specifications," and appellee's assertion that appellant "failed to connect the Windsor sewer line to the permanent sewer line on [appellee's] property. (Jan. 24, 2024 Decision at 6.) The court observed appellant "admits . . . the terms of the contract breakdown around the parties' understanding of the term 'permanent,' " and that appellant "[a]dditionally . . . admits that those terms specified within the . . . email did not necessarily pertain solely to his obligations, but, in fact, contain matters [appellee] was responsible for." (Decision at 6.) Thus, the court found, "although some terms may be contained within the 9/2/2020 email, certain terms of the oral agreement are clearly missing from the email," and it is "these terms and the parties' sparring viewpoints that create a dispute of material fact regarding whether an oral agreement truly existed." (Decision at 6.)

{¶ 53} The trial court further found "[a] dispute of material fact remains concerning the parties' unjust enrichment claims as well." (Decision at 6.) Specifically, noting the parties' competing claims that each has been unjustly enriched by the installation of the sewer lines and easements, the court held in part:

> Defendant claims Plaintiff has been unjustly enriched because Defendant paid for the completion of the temporary sewer line work that was later utilized by Plaintiff's contractors. Plaintiff admits that a portion of the sewer line work was completed by Defendant's contractor Edwards Excavating, and later connected to by his contractor Windsor. . . . Yet, because it is unclear what work was designated to which party and whether that party would assume the related costs, questions of material fact remain concerning who, if any, was unjustly enriched.

(Decision at 6.)

{¶ 54} Based on this court's de novo review of the evidence submitted on summary judgment, including deposition testimony and the competing affidavits of appellant and appellee, we find the record supports the trial court's determination that genuine issues of material fact remained for trial. In his motion for summary judgment, appellant submitted his own affidavit in which he averred that "[t]o date, the sewer line that I had installed is functioning and flowing properly to and from the connection point on the Roach property at . . . Arbutus Avenue to the main line on Jackson Street, which services the Hero Havens

property at . . . Columbus Street and the new sewer line to the Castro property." (Castro Aff. at ¶ 17.) Regarding the issue of unjust enrichment, appellant argued in his motion that he conferred to appellee "the benefit of . . . a working replacement sewer line, which services [appellee's] property." (Appellant's Mot. for Summ. Jgmt. at 10.) Appellant also argued he was not vicariously liable for the acts of his independent contractors, asserting he "did not control the method and means" for how Three Pillars or Windsor performed their work. (Castro Supp. Aff. at ¶ 11.)

{¶ 55} In its response to appellant's motion for summary judgment, appellee submitted the affidavit of Lawrence Titus, who averred that his understanding of the agreement between the parties was that Edwards Excavating would install two sewer lines, one to be used temporarily until construction on appellant's property was completed, and a permanent line "with proper fall to code to be used once construction on [appellant's] property was completed." (Titus Aff. at ¶ 14.) Titus stated that, after Edwards Excavating installed the two sewer lines "to service my property," appellant hired Windsor to install a sewer line running from appellant's property to Jackson Street. (Titus Aff. at ¶ 16.) Titus averred that Windsor, "[w]hen connecting [appellee's] sewer line to the Windsor sewer line," tied that line to the temporary sewer line rather than the permanent line. (Titus Aff. at ¶ 19.) According to Titus, "Windsor should have connected the Windsor sewer line to the permanent sewer line, rather than the temporary sewer line." (Titus Aff. at ¶ 19.)

{¶ 56} Appellee, in a supplement to its memorandum contra the motion for summary judgment, cited the July 13, 2023 deposition testimony of appellant in support of its contention genuine issues of material fact existed for trial. Specifically, appellee argued that while appellant acknowledged appellee hired a contractor (Edwards Excavating) to run two sewer lines, i.e., " 'a temporary line . . . and a supplemental, just-in-case line across' [appellant's] property, [appellant] had a different understanding than [appellee] of the purpose of these two sewer lines." (Supp. to Memo Contra Summ. Jgmt. at 4, quoting Castro Depo. at 28.) Appellee further argued that appellant, "when asked about his understanding of the purpose of the so-called supplemental line, . . . stated that '[t]he one line would be hooked up. And in case of damage, the second line would be there for better fall coming out of [appellee's] house.' " (Supp. to Memo Contra Summ. Jgmt. at 4, quoting Castro Depo. at 29.)

{¶ 57} Appellee maintained, however, "the second line was not created just in case of damage to the temporary line" but, rather, the "second, permanent line was intended to be used once construction on [appellant's] property was completed." (Supp. to Memo Contra Summ. Jgmt. at 4.) Appellee further argued that appellant "repeatedly called what Mr. Titus has called the temporary sewer line the 'active sewer line' throughout his deposition, indicating his supposed belief that this temporary sewer line was the sewer line that Windsor was supposed to tie into." (Supp. to Memo Contra Summ. Jgmt. at 4.)

{¶ 58} The record on summary judgment, which must be viewed in the light most favorable to the non-moving party, demonstrates, as found by the trial court, genuine issues of material fact existed as to the material terms of the agreement, including the understanding of the parties with respect to the term "permanent." As noted, while appellant argued the sewer line he installed is functioning and that it allows adequate flow with respect to appellee's property, appellee asserted its sewer line did not function properly after appellant's contractor (Windsor) tied into the temporary sewer line instead of the permanent line, and that this constituted a breach of the parties' oral agreement to provide a permanent and effective solution. According to appellee, tying into the permanent line was critical to the parties' agreement as that line had the proper fall.

{¶ 59} The record reflects the parties' differing opinions as to the significance of the two lines installed by Edwards Excavating and as to the subsequent "tie-in" to one of those lines by Windsor. Appellant testified at his deposition that "[t]he excavator did a temporary line, Larry Titus and Hero Havens hired a contractor to run a new line to tie in and a supplemental, just-in-case line across my property." (Castro Depo. at 28.) When asked about his understanding of the supplemental line, appellant responded that "one line would be hooked up," and "in case of damage, the second line would be there for better fall coming out of his house." (Castro Depo. at 29.) According to appellant, the "supplemental" line "would be the line that's currently capped off and never used." (Castro Depo. at 33.) Appellant testified the company he hired (i.e., Windsor) tapped into "[t]he active line." (Castro Depo. at 33.) During his deposition, appellant identified an exhibit showing an "orange line" as depicting the supplemental or backup line, and he identified a "purple line" on the exhibit as depicting the "active line." (Castro Depo. at 83.) Appellant acknowledged

that his reference to the "active line" corresponded to what Titus represented as "a sewer temp." (Castro Depo. at 52-53.)

{¶ 60} By contrast, according to the affidavit of Titus, "I did not have Edwards [Excavating] create the permanent sewer line as back-up or just in case something happened to the temporary line," but, rather, "I had Edwards [Excavating] create the permanent sewer line to service Hero Havens' property on a permanent basis once construction on Castro's property was completed." (Titus Aff. in Support of Appellee's Supp. to its Memo Contra Castro Mot. for Summ. Jgmt. at ¶ 17.) Titus averred that his property "continues to experience issues with the sewer line due to Windsor tying the Windsor sewer line into the temporary sewer line, rather than the permanent sewer line." (Titus Aff. in Support of Appellee's Supp. to its Memo Contra Castro Mot. for Summ. Jgmt. at ¶ 20.)

{¶ 61} Here, while the intent of the parties with respect to the purported oral agreement may have been to achieve a permanent and effective solution, the record on summary judgment reflects disputed issues of material fact, including evidence regarding the parties' differing views as to the purpose of the two sewer lines and as to whether the tie-in (connection) to appellee's "active" line (rather than the "supplemental" line) by appellant's contractor (Windsor) was contrary to the terms of the agreement and the understanding of the parties to bring about such a solution. Accordingly, the trial court did not err in its determination that genuine issues of material fact precluded summary judgment on the claim and counterclaim for breach of oral agreement.

{¶ 62} Further, the record supports the trial court's finding that questions of fact remained as to who, if any, was unjustly enriched. While appellant asserted that he conferred the benefit of a proper easement and working replacement sewer line that services appellee's property, appellee disputed that the sewer line functioned properly because Windsor tied the connection to the temporary line rather than the permanent line (i.e., appellee asserted the failure to provide an effective and permanent solution raised a disputed issue of fact as to whether a benefit was conferred). Appellee also asserted the work performed by its contractor, Edwards Excavating, benefited appellant by allowing construction to proceed on appellant's residence while the parties sought to resolve the situation created by the severed sewer line.

{¶ 63} Here, the parties' competing unjust enrichment claims are contingent upon the "same evidence" that creates a genuine issue of material fact underlying the breach of contract claims. *Thyssen Krupp Elevator Corp. v. Constr. Plus, Inc.*, 2010-Ohio-1649, ¶ 27 (10th Dist.) (summary judgment improper as to plaintiff's unjust enrichment claim because it was dependent on same evidence that created a genuine issue of material fact regarding plaintiff's claim for breach of contract). On review, the trial court did not err in its determination that "questions of material fact remain concerning who, if any, was unjustly enriched." (Decision at 6.)

{¶ 64} Accordingly, because genuine issues of material fact remained as to the claims for breach of oral contract and unjust enrichment, the trial court did not err in denying appellant's motion for summary judgment. Appellant's third assignment of error is not well-taken and is overruled.

## IV. Conclusion

{¶ 65} Based upon the foregoing, appellant's three assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

EDELSTEIN and DINGUS, JJ., concur.

———————————